COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, O'Brien and White
Argued at Norfolk, Virginia


DAVID KEENAN BROWN

MEMORANDUM OPINION*
v.        Record No. 1021-21-1        BY JUDGE GLEN A. HUFF
DECEMBER 13, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Michael A. Gaten, Judge

Charles E. Haden for appellant.

Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, the City of Hampton Circuit Court (the "trial court") convicted

David Keenan Brown ("appellant") of two misdemeanor charges: driving under the influence of

drugs in violation of Code § 18.2-266 and following too closely in violation of Code § 46.2-816.

Appellant appeals on the sole claim that the evidence was insufficient to support his convictions.

This Court finds the evidence insufficient as to the first charge, driving under the influence, but

not as to the second.  Therefore, this Court reverses the conviction for driving under the

influence of drugs but affirms appellant's conviction for following too closely.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND[1]

This Court recounts the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).  In doing so, this Court discards any evidence presented by appellant that conflicts with the Commonwealth's evidence and "regard[s] as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On March 31, 2021, at approximately 11:00 p.m., appellant rear-ended another vehicle, occupied by Mr. James Johnson and Mrs. Cynthia Johnson, at an intersection in the City of Hampton.  After arriving at the scene of the accident, police Officer Ringling spoke to appellant, who was sixty-four years old, approximately six feet tall, and weighed 180 pounds.  Appellant "appeared unsteady on his feet and . . . very lethargic while looking for his license and registration information."  Based on those observations, Officer Ringling administered several standard field sobriety tests ("SFSTs") to appellant.

Officer Ringling acknowledged at trial that appellant performed the first four tests correctly: (1) counting backwards from sixty-four to forty-six; (2) counting his fingers from one to four and back again by touching his thumb to the tip of his finger; (3) reciting the alphabet from letters E through S; and (4) the finger-to-nose test, which required appellant "to extend his index fingers out to the side while keeping his feet together" and then "touch the tip of his finger to the tip of his nose and bring it back in one smooth motion" while keeping his head tilted back and eyes closed.

---

[1] The record in this case contains a statement of facts in lieu of a transcript of the evidence and testimony presented at trial.  The trial court certified the statement as "accurate and complete," and the Commonwealth agreed.

However, appellant "performed poorly" on the final three tests: the horizontal gaze nystagmus ("HGN") test; the nine-step walk-and-turn test; and the one-leg stand test. The HGN test "notes the presence of nystagmus, an involuntary jerking of the eye that can be caused by central nervous system depressants." According to Officer Ringling:

> [Appellant] displayed a lack of smooth pursuit in both the left and right eyes. There was a distinct and sustained nystagmus noted at maximum deviation. The onset of nystagmus was noted prior to 45 degrees in both eyes.

Successful completion of the final two tests requires good balance, which appellant could not maintain. During the walk-and-turn test, appellant did not walk in a straight line and "raise[d] his arms to steady himself."[2] For the one-leg stand, appellant "was unable to maintain his balance for long and quickly put his foot down" before Officer Ringling instructed him to do so.[3]

Notwithstanding the absence of any further evidence that appellant might be intoxicated—no watery or bloodshot eyes, no slurred speech, no odor of alcohol coming from him—Officer Ringling asked appellant whether he "had anything to drink."[4] When appellant said no, Officer Ringling then inquired whether he "had any physical disabilities or had taken any medication." Appellant explained that he had "arthritis in his right foot and that his right foot was larger than his other foot, which tended to cause [him] to have problems with his

---

[2] This test required appellant to take nine heel-to-toe steps along an imaginary straight line, "then pivot on his left foot in a series of small steps to execute a 180-degree turn," and walk nine heel-to-toe steps back along the same line.

[3] This test required appellant "to stand on one foot and raise it approximately six inches from the ground, keeping the foot parallel to the ground, keeping both legs straight, and counting out loud . . . until Officer Ringling told him to stop."

[4] Appellant also blew into an Alco sensor device—a portable preliminary breath test machine—at Officer Ringling's request on scene, but the device "did not detect the presence of alcohol."

balance." He also stated that he had taken "Ambien, melatonin, and amitriptyline, a medication used to treat fibromyalgia in adults."

Officer Ringling issued a summons and arrested appellant at approximately 11:45 p.m. on misdemeanor charges of following too closely and driving under the influence, first offense. He immediately transported appellant to the hospital where registered nurse Zachary Martin took a sample of appellant's blood.[5] Mr. Martin submitted appellant's blood sample to the Virginia Department of Forensic Science for testing.

The Hampton General District Court conducted a bench trial on July 28, 2021, after which it found appellant guilty on both counts. Appellant appealed that judgment to the trial court, which held a *de novo* bench trial on September 7, 2021.[6]

At that trial, both Mr. and Mrs. Johnson testified that appellant rear-ended their vehicle on March 31, 2021, as they came to a stop at the intersection in Hampton. Officer Ringling testified to his observations of appellant at the scene of the accident, including appellant's performance on the SFSTs, as well as appellant's statements about the medications he had taken that evening.

Next, the Commonwealth introduced the results of appellant's blood test by admitting into evidence a certificate of analysis (the "certificate") dated June 11, 2021. The certificate indicated that lab technician Ms. Eileen Briley performed the forensic testing of appellant's blood on April 12, 2021. Dr. Jon Dalgleish examined and analyzed those results on June 7, 2021, after which he prepared and signed the certificate. Appellant's blood was screened for a variety of drugs and drug classes, including ethanol (blood alcohol), cocaine, opiates,

---

[5] Appellant consented to the blood draw.

[6] Appellant represented himself *pro se* at both trials.

- 4 -

oxycodone, methamphetamine, fentanyl, methadone, barbiturates, zolpidem (Ambien),[7] cannabinoids, tricyclic antidepressants, and trazadone.

The only reported elements detected in appellant's blood were zolpidem ($0.052 \pm 0.010$ mg/liter), amitriptyline ($0.17 \pm 0.04$ mg/liter), and nortriptyline ($0.23 \pm 0.06$ mg/liter). No alcohol or any other drugs were detected. Neither Dr. Dalgleish nor Ms. Briley testified at trial, and the Commonwealth did not offer any other expert testimony as to the contents of the certificate.

Following the Commonwealth's evidence, appellant testified on his own behalf. He acknowledged "having failed to stop in time to avoid hitting the rear of the Johnsons' vehicle," but "denied that he had been following the Johnsons' vehicle too closely or that the accident occurred because he had been . . . under the influence of alcohol or drugs." Rather, appellant claimed that "he failed to realize until too late that the Johnsons' vehicle had come to a stop" because "something on the side of the roadway" momentarily distracted him and by the time he "returned his attention to the road" he couldn't avoid the collision.

Appellant further denied "having consumed any beer or alcohol" on March 31 and insisted that the medications he had taken had not "caused him to be under the influence or unable to drive safely." His testimony at trial was consistent with what he told Officer Ringling at the scene of the accident: that he had taken Ambien, melatonin, and amitriptyline, that his doctor had prescribed the amitriptyline (used to treat fibromyalgia in adults) because he had arthritis in his right foot, that his right foot was larger than his left foot, and that the combination of his arthritis and mismatched feet "tended to cause . . . problems with his balance."

---

[7] For purposes of the appeal, this Court recognizes that Ambien is the trade name for the drug zolpidem. Although the record is silent as to whether this connection was sufficiently established at appellant's trial, both parties appear to assume such and have not raised this issue on brief.

Prior to the trial court's judgment, appellant "challeng[ed] the sufficiency of the evidence" on the same grounds now presented on appeal, namely, that the Commonwealth failed to prove appellant had been following the Johnsons' vehicle too closely or that he was under the influence of drugs to a degree that "impair[ed] his ability to drive or operate his motor vehicle safely." In support of this claim, appellant noted that "the mere happening of an accident d[oes]n't by itself prove that he had driven recklessly or improperly."

In addition to claiming that his pre-existing medical conditions hindered his ability to perform the SFSTs involving balance, appellant opined that being lethargic and unsteady are symptoms "consistent with a person who had just experienced an automobile crash and had been rendered dazed and confused from the impact." Unconvinced by appellant's arguments, the trial court denied his "functional equivalent of a motion to strike the evidence" and found appellant guilty of both charges.

This appeal followed.[8]

## II. STANDARD OF REVIEW

Appellant's sole assignment of error on appeal alleges that the trial court erred in finding the evidence sufficient to convict him of both charges.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to

---

[8] On March 11, 2022, the trial court issued an "Amended Criminal Order" in response to this Court's March 8, 2022 order for the sole purpose of clarifying that:

> [T]he prosecution in this matter was under Virginia Code § 18.2-266 and 46.2-816, state codes. The "local ordinance" boxes that are checked on the conviction/sentencing orders dated September 7, 2021, are an administrative mechanism to allow the City to collect fines but the substance of the charges were a state prosecution, prosecuted by Michael Mullen, former Assistant Attorney for the Commonwealth.

support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). In such cases, the "relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). To the extent that analysis raises a question of statutory interpretation, this Court reviews such issues *de novo*. *See Eley v. Commonwealth*, 70 Va. App. 158, 162 (2019); *Blake v. Commonwealth*, 288 Va. 375, 381 (2014) ("[W]e . . . review de novo the scope and application of the statute under which the defendant was convicted.").

In the context of cases involving allegations of intoxicated driving under Code § 18.2-266(iii), the factfinder is expressly directed to "determine the innocence or guilt of the defendant from all the evidence concerning his condition at the time of the alleged offense." Code § 18.2-268.10(D). This Court defers to the factfinder "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Abdullah v. Commonwealth*, 53 Va. App. 750, 755 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

### III. ANALYSIS

In challenging the sufficiency of the evidence, appellant contends the Commonwealth failed to prove that he: (1) operated his vehicle while under the influence of drugs; (2) followed the Johnsons' vehicle too closely; and (3) operated his vehicle in a reckless or improper manner. For the reasons stated below, this Court reverses appellant's conviction for driving under the influence of drugs and affirms appellant's conviction for following too closely.

A. Appellant's Conviction for Driving Under the Influence of Drugs

Code § 18.2-266 provides several ways by which a person may be convicted for driving while under the influence of alcohol, drugs, or both. The trial court convicted appellant for driving under the influence of drugs pursuant to subsection (iii) of the statute, which makes it

> unlawful for any person to drive or operate any motor vehicle . . . while such person is under the influence of any narcotic drug or any other self-administered intoxicant or drug of whatsoever nature, or any combination of such drugs, *to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely*.

Code § 18.2-266(iii) (emphasis added). That language is substantively distinct from the preceding subsection, which simply makes it "unlawful for any person to drive or operate a motor vehicle . . . while such person is under the influence of alcohol." Code § 18.2-266(ii).

In contrast, subsection (iii) is purposefully written to require proof not only that the defendant was under the influence of drugs but also that those drugs actually impaired the defendant's ability to drive safely. At oral argument, the Commonwealth contended that the totality of the evidence, viewed as a whole, supports the trial court's reasonable inferences in satisfaction of this burden of proof.[9] Despite admitting that calling an expert at appellant's trial would have been "best practices," the Commonwealth steadfastly maintained that such evidence was not necessary for the trial court to convict appellant. This Court disagrees as to both grounds.

---

[9] In convicting appellant, the trial court had to have made the following inferences: that the levels of zolpidem, amitriptyline, and nortriptyline in appellant's blood were sufficient to subject appellant to their chemical effects, that such chemical effects included—and were directly responsible for—appellant's lethargy and difficulty balancing, and that those effects actually impaired appellant's ability to drive safely by causing him to rear-end the Johnsons' vehicle. As explained below, these inferences are insufficient for a finding of guilt, thus requiring reversal of appellant's conviction under Code § 18.2-266(iii).

At the outset, this Court readily acknowledges that "[c]ircumstantial evidence is not 'viewed in isolation' because the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable [fact finder]' to conclude beyond a reasonable doubt that a defendant is guilty." *Rams v. Commonwealth*, 70 Va. App. 12, 27 (2019) (second alteration in original) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005)). This principle is frequently applied to so-called "refusal" cases, in which a defendant accused of driving under the influence refuses to take any type of chemical test.

In those situations, a defendant may be convicted based solely on the arresting officer's testimony about the accused's behavior and physical state, *if* sufficient to prove guilt beyond a reasonable doubt. For example, circumstantial evidence sufficient to prove the defendant operated a motor vehicle while under the influence of alcohol—in violation of Code § 18.2-266(ii)—often consists of an officer's observations that the defendant was driving in an erratic or unlawful manner, had red, watery, and bloodshot eyes, was unsteady on their feet, had slurred speech, had the odor of an alcoholic beverage on their breath, and failed one or more SFSTs.

Those observations, however, are significantly less informative in cases involving substances other than alcohol. The common signs of alcohol intoxication widely recognized by the general public and trial courts are not necessarily indicative of intoxication by other drugs.

The Commonwealth argues that *Wood v. Commonwealth*, 57 Va. App. 286 (2010), makes the effects of Ambien general knowledge just like the effects of alcohol impairment, thus obviating the need for expert testimony. This Court rejects that interpretation of *Wood* and declines to impose such a *per se* rule here.

In *Wood*, appellant's conviction for felony child neglect—based on driving while intoxicated with her children in the car—was affirmed because her "high level of [alcohol]

intoxication . . . alone justifie[d] a finding of gross, wanton, and culpable conduct." 57 Va. App. at 301. This Court went on to note that Wood's ingestion of Ambien was an "aggravating factor[] beyond [her] intoxication" because Ambien is a "'hypnotic drug' . . . given for the primary purpose of causing and inducing sleep." *Id.* at 302. That dicta, however, comes verbatim from Dr. Edinboro's expert testimony at Wood's trial. *Id.* at 293-95.[10] It is not a fact of which the trial court can take judicial notice in every case involving Ambien.

Accordingly, a conviction under subsection (iii) cannot rely on observations of a defendant's behavior without other evidence linking that behavior to the effects of a particular drug to a degree that impairs his ability to drive safely. Unlike subsection (iii), subsections (i) and (v) provide *per se* thresholds for conviction based upon enumerated levels of alcohol or drugs in a defendant's blood.[11] And Code § 18.2-269—which tracks the language of Code § 18.2-266—creates certain presumptions of a person's impairment to an unsafe degree based on different levels of alcohol or drugs detected in the person's blood.[12] But none of those presumptions apply to the specific drugs detected in appellant's blood: zolpidem, amitriptyline, and nortriptyline.

---

[10] Dr. Edinboro also "noted that both alcohol and [z]olpidem are central nervous system depressants, so there is an 'additive effect' when both are consumed." *Wood*, 57 Va. App. at 295.

[11] Subsection (i) of Code § 18.2-266 makes it illegal for a person to drive or operate a motor vehicle while having "a blood alcohol concentration of 0.08 percent or more." Subsection (v) makes it illegal for a person to drive or operate a motor vehicle while having a per liter blood concentration of either "0.02 milligrams of cocaine," "0.1 milligrams of methamphetamine," "0.01 milligrams of phencyclidine," or "0.1 milligrams of 3,4-methylenedioxymethamphetamine."

[12] The only part of Code § 18.2-269 that creates a presumption for drugs is subsection (A)(4), which states that if a chemical test shows the presence of cocaine, methamphetamine, phencyclidine, or 3,4-methylenedioxymethamphetamine in amounts equal to or greater than those set forth in Code § 18.2-266(v), "it shall be presumed that the accused was under the influence of drugs at the time of the alleged offense to a degree which impairs his ability to drive or operate any motor vehicle, engine or train safely."

Thus, where, as in appellant's case, the drugs at issue do not give rise to a statutory presumption of causation, the Commonwealth cannot satisfy the causation requirement of Code § 18.2-266(iii) without proving a specific drug, or combination thereof, affected the driver to a degree that impaired his ability to drive safely. *Cf. Davis v. Commonwealth*, 8 Va. App. 291, 296 (1989) ("[A] blood alcohol concentration which seriously impairs one individual's ability to drive safely may impair to a different degree another's ability to do so."). Consequently, the results of appellant's blood analysis, standing alone, are insufficient for this purpose. Nor does joint consideration of those results with the remainder of the Commonwealth's evidence result in a different conclusion.

At appellant's trial, the Commonwealth presented no evidence to support its proposition that the drugs in appellant's blood caused his lethargy or unsteadiness. In the absence of such evidence, the trial court could not reasonably infer beyond a reasonable doubt that appellant's lethargy and balance issues were in fact signs of actual impairment of his ability to drive safely, let alone that they were caused by the specific levels of zolpidem, amitriptyline, and nortriptyline in his blood. *See Moody v. Commonwealth*, 28 Va. App. 702, 706 (1998) ("The fact finder . . . is entitled to draw inferences from proved facts, so long as the inferences are reasonable and justified."). Moreover, appellant's mere failure to pass the HGN test provides no further proof as to whether he was impaired to the extent he could not drive safely.

Officer Ringling did not observe appellant driving, nor did he explain how the presence of appellant's nystagmus would affect his driving or his balance. Instead, Officer Ringling merely testified that the HGN test is designed to detect "the presence of nystagmus, an involuntary jerking of the eye that *can be* caused by central nervous system depressants." (Emphasis added). Neither defendant's admission of taking drugs nor the confirmatory results in the certificate prove that his nystagmus was in fact caused by the zolpidem, amitriptyline, or

- 11 -

nortriptyline detected in his blood.  *See Henshaw v. Commonwealth*, 3 Va. App. 213, 217 n.1 (1986) ("The [HGN] test is thought to be a valid measure of blood alcohol content but is subject to criticism on the basis that its administration in the field may yield imprecise results and may be clouded by physiological processes other than intoxication.").

Thus, the totality of the Commonwealth's evidence was insufficient to bridge the causal gap between appellant's ingestion of drugs and the trial court's conclusion that those drugs impaired appellant to the extent he could not drive safely.

It is not mere coincidence that Virginia courts have relied on expert testimony when affirming other defendants' convictions in cases where sufficiency of the evidence was challenged as to drug-impaired driving.  Take, for example, *Martini v. Commonwealth*, No. 0392-15-4 (Va. Ct. App. Mar. 8, 2016), in which this Court affirmed Martini's conviction under Code § 18.2-266 after she rear-ended another vehicle while under the influence of drugs.  The evidence in that case included Martini's admission to Officer Walton that she had taken medication which "makes her drowsy" as well as expert testimony that the high levels of alprazolam and diazepam found in Martini's blood "are consistent with drowsiness, slowed reflexes, slowed reaction time, lethargy, slurred speech, slowed processing, slowed decision making, extreme difficulty with balance, and effects on coordination."  *Id.*, slip op. at 13-14.

As a result of that particular evidence, the Court upheld "the jury's conclusion that Martini was under the influence of her prescription drugs to a degree that impaired her ability to operate her vehicle safely."  *Id.*, slip op. at 14; *see also Lambert v. Commonwealth*, 70 Va. App. 54, 65-66 (2019) (finding appellant's admission to consuming methadone prior to the accident and Dr. Kuhlman's testimony that the significant level of methadone in appellant's blood could "cause depressant effects that impair the ability to drive including lethargy, dizziness, slowed hand-eye coordination, and difficulty balancing" were "sufficient to support the jury's

- 12 -

conclusion that appellant was under the influence of an intoxicant while driving"), *aff'd*, 298 Va. 510 (2020).

With regard to Ambien specifically, *Wood* does not stand for the Commonwealth's proposition, as discussed above, that the effects of Ambien are so well established as to be considered general common knowledge and thus obviate the need for expert testimony. However, the expert testimony presented in *Wood* provides a useful example of the required causation evidence missing from appellant's trial. In particular, Dr. Edinboro opined that the level of Ambien in Wood's blood would have been .12 mg/liter at the time of the car crash, which is "consistent with the ingestion of one tablet." *Wood*, 57 Va. App. at 294. He further opined that "[z]olpidem in the blood at .09 [mg/liter] indicates the person should be sleeping, not driving" because the drug's effects include "drowsiness, confusion, lack of cognitive ability and some motor incoordination." *Id.*

Similar testimony was introduced at appellant's trial for driving under the influence of drugs in *Shortt v. Commonwealth*, No. 2435-09-4 (Va. Ct. App. Nov. 9, 2010). In that case, Dr. O'Neal testified that the 0.14 mg/liter of zolpidem found in Shortt's blood was "within the normal range for a therapeutic dose of a 10-milligram Ambien tablet." *Id.*, slip op. at 4. According to Dr. O'Neal, Ambien is mainly used to treat insomnia because it "induces sleep" by causing "sedation and drowsiness." *Id.* Other effects include "loss of balance and coordination, increased reaction time, confusion, disorientation, loss of short-term memory, and slurred speech." *Id.*

In the case of *Riley v. Commonwealth*, 277 Va. 467 (2009), the Commonwealth offered expert testimony from Dr. Saady that the .56 mg/liter of zolpidem found in appellant's blood was "rather excessive" because "a normal-size individual [would] have to take four [Ambiens] in order to achieve" that concentration level. 277 Va. at 475 (alterations in original). Dr. Saady

further explained that Ambien is "pharmacologically designed to induce sleepiness," such that it "takes effect on the individual in about 15 minutes and reaches it [sic] peak level of concentration approximately one hour after ingestion." *Id.* If the individual remains awake after taking Ambien, "the medication can cause drowsiness, confusion, somnolence, and coordination problems." *Id.* In Dr. Saady's opinion, all those side effects "would affect a person's ability to operate a motor vehicle," and "Riley's reported behavior on the night of the accident was consistent with an excessive dose of Ambien." *Id.* at 475-76.[13]

This Court finds it worth noting that the certificate introduced at appellant's trial shows .052 mg/liter of zolpidem in appellant's blood. That level is significantly less than those to which Dr. Edinboro, Dr. O'Neal, and Dr. Saady ascribed the effects of Ambien.

As a final point, this Court holds that a trial court cannot reverse engineer this causal link by claiming a defendant's car accident inherently creates a reasonable inference of impairment, even where the defendant's fault in causing the accident is undisputed. Although not immaterial to this inquiry, the trial court's determination here that appellant violated Code § 46.2-816 does not inherently give rise to a reasonable inference that appellant was following the Johnsons' vehicle too closely *as a result of* having taken zolpidem, amitriptyline, and nortriptyline. These are two distinct charges for which the Commonwealth had the burden of proving each element beyond a reasonable doubt.

It is axiomatic that a person can violate traffic laws without being under the influence of alcohol or drugs; or, alternatively, can be found guilty of driving under the influence without having violated any other law. *See, e.g.*, *Spickard v. City of Lynchburg*, 174 Va. 502, 504 (1940) ("One may be both drunk and reckless. He may be reckless though not drunk; he may even be

---

[13] In *Riley*, the Supreme Court affirmed appellant's convictions for "driving while intoxicated and maiming another person as a result of driving while intoxicated." 277 Va. at 485.

- 14 -

. . . under the influence of intoxicants and yet drive carefully.").  But the evidence in this case does not prove that the drugs appellant consumed actually impaired him in any way, nor that any impairment, if proven, would have caused him to follow the Johnsons' vehicle too closely.

Therefore, in the absence of a statutory presumption, expert testimony, or other explanatory evidence, the trial court could not reasonably infer that appellant's ingestion of Ambien, melatonin, and amitriptyline impaired his ability to drive safely.  Consequently, the trial court erred in finding the evidence sufficient to convict appellant of driving under the influence of drugs under Code § 18.2-266(iii).

### B.  Appellant's Conviction for Following Too Closely

The trial court convicted appellant under Code § 46.2-816 for following the Johnsons' vehicle too closely.  That statute prohibits the driver of a motor vehicle from following another vehicle "more closely than is reasonable and prudent, having due regard to the speed of both vehicles and the traffic on, and conditions of, the highway at the time."  Code § 46.2-816.  The Supreme Court has "construed this statute as granting a driver the right to follow another vehicle as closely as is reasonable and prudent under the circumstances.  What constitutes a reasonable distance must, in each instance, depend upon the particular facts involved."  *Clifton v. Gregory*, 212 Va. 859, 862 (1972).

This fact-specific inquiry precludes a trial court from finding a defendant guilty of following too closely merely because an accident happened.  *See Bacon v. Commonwealth*, 220 Va. 766, 769 (1980) ("[T]he mere fact that an accident happened . . . does not give rise to an inference of reckless driving, or of improper driving.").  But evidence as to the manner in which an accident occurred can give rise to a reasonable inference that a defendant was following more closely than reasonable under the circumstances.  *Cf. Powers v. Commonwealth*, 211 Va. 386, 389 (1970) (reversing appellant's reckless driving conviction where the Court had "no way of

determining from the evidence in [the] record how and why the accident happened"). As the Supreme Court explained in *Maroulis v. Elliott*, 207 Va. 503 (1966):

> The likelihood of sudden stopping is one of the reasons for requiring an automobile driver to keep a proper lookout, and to maintain a reasonable and prudent distance behind an automobile in front of him. Every driver knows that vehicles may stop suddenly for various reasons or causes. It is not necessary that one should foresee the cause of which a car may stop; but if he is prudent he must recognize the possibility of a sudden stop.

207 Va. at 509 (interpreting former Code § 46.1-213,[14] a nearly identical predecessor to Code § 46.2-816).

In *Litchford v. Hancock*, 232 Va. 496, 499 (1987), the Court clarified that drivers are held to a standard of ordinary care "to observe other vehicles on the highway, to see what a reasonable person would have seen, and to react as a reasonable person would have reacted under the circumstances to avoid a collision." Applying these principles to appellant's case, this Court finds the record contains two important pieces of evidence that support the trial court's reasonable inference that appellant was following the Johnsons too closely.

First, both Mr. and Mrs. Johnson testified that their vehicle had slowed down and come to a stop at the intersection before appellant struck them. The trial court could thus reasonably conclude that a prudent driver keeping a proper lookout would have noticed both the approaching intersection and the slowing of the Johnsons' car. That prudent driver would then have responded accordingly in order to maintain a reasonable distance from the Johnsons. By rear-ending the Johnsons at the intersection, appellant failed to maintain both a proper lookout and reasonable distance.

---

[14] Former Code § 46.1-213 provided: "The driver of a motor vehicle shall not follow another motor vehicle, trailer or semitrailer more closely than is reasonable and prudent, having due regard to the speed of both vehicles and the traffic upon, and conditions of, the highway at the time."

- 16 -

Second, appellant testified that he took his eyes off the road "momentar[il]y" because he was distracted by something on the side of the road. When he returned his gaze to the front, appellant saw that the Johnsons' car had stopped, but he was too close to stop his own vehicle from hitting them. Based on these facts, the trial court could reasonably infer that a mere moment's distraction would not have caused appellant to rear-end the Johnsons' vehicle unless he had been following too closely.

Therefore, this Court finds the record contains sufficient evidence to support appellant's conviction under Code § 46.2-816.

### III. CONCLUSION

For the reasons stated above, this Court finds the evidence insufficient to support appellant's conviction for driving under the influence of drugs in violation of Code § 18.2-266(iii). However, this Court finds the evidence sufficient to support appellant's conviction for following too closely in violation of Code § 46.2-816. Therefore, this Court reverses appellant's conviction for driving under the influence of drugs and affirms his conviction for following too closely.

*Affirmed in part and reversed in part.*